IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| M.S., a minor, by and through her parent, J.S.,<br><br>　　　　　　　　Plaintiff,<br><br>v.<br><br>UTAH SCHOOL FOR THE DEAF AND BLIND,<br><br>　　　　　　　　Defendant. | MEMORANDUM DECISION AND ORDER AWARDING ATTORNEYS' FEES<br><br><br>Case No. 2:13-CV-420 TS<br><br>District Judge Ted Stewart |

This matter is before the Court on Plaintiff's Motion for Attorneys' Fees[1] and Amended Motion for Attorneys' Fees.[2]  For the reasons discussed more fully below, the Court will grant Plaintiff's Amended Motion, deny Plaintiff's initial Motion as moot, and award Plaintiff $77,489.10 of attorneys' fees.

## I.  BACKGROUND

M.S. is a residential student at the Utah School for the Deaf and Blind ("USDB").  On January 8, 2013, M.S.'s mother requested a due process hearing based on alleged violations by USDB of the Individuals with Disabilities Education Act ("IDEA").  The hearing officer found in favor of USDB on most of the issues, but found in favor of M.S. on one procedural issue and one substantive issue.  Both parties appealed the hearing officer's decision to this Court.

---

[1] Docket No. 46.

[2] Docket No. 49.

On August 25, 2014, the Court issued an Order affirming in part and reversing in part the hearing officer's decision.  The Court ordered M.S.'s Individual Educational Program ("IEP") Team to meet and establish an updated IEP consistent with the Court's Order, and awarded various compensatory educational services for M.S. and reimbursement for Plaintiff's out-of-pocket expenses incurred in connection with M.S's Independent Educational Evaluation ("IEE") conducted by Perkins School for the Blind ("Perkins").

During the pendency of the administrative and judicial proceedings, the IEP Team held meetings in February 2013, February 2014, and April 2014.

## II.  DISCUSSION

Plaintiff seeks attorneys' fees for multiple attorneys on all three stages of this dispute: the IEP meetings, the due process hearing, and the instant suit.  Specifically, Plaintiff asserts that the prevailing rate in the community for this type of work is $300 per hour and claims fees for the following time:

Ms. Alberhasky billed 89.4 hours relating to IEP meetings, 370.3 hours relating to the due process hearing, and 179.3 hours relating to the instant suit, for a total of 639 hours.  Two paralegals in Ms. Alberhasky's office billed a total of 69.7 hours—55.7 hours related to an IEP meeting and 14 hours related to the due process hearing.  Ms. Alberhasky asserts that the prevailing rate in the community for the work performed by these paralegals is $100 per hour.

Mr. Strindberg billed 11.4 hours related to IEP meetings, and 84.1 hours related to the instant suit.  In total, Mr. Strindberg billed 95.5 hours.  A paralegal in Mr. Strindberg's office billed 11.35 hours in connection with the instant suit, and Mr. Strindberg asserts that the prevailing rate in the community for this work is $115 per hour.  Similarly, an administrative

assistant in Mr. Strindberg's office billed 1 hour in connection with the instant suit, and Mr. Strindberg asserts that the prevailing rate in the community for this type of work is $95 per hour.

Finally, Mr. Gardner billed 128.6 hours related to the due process hearing.

Defendant argues that Plaintiff is not entitled to portions of the requested fees that are (1) not based on Plaintiff's fee arrangement, (2) related to travel expenses, (3) related to IEP meetings, and (4) unreasonable.  Defendant also objects to costs incurred in connection with IEP meetings and costs that are not itemized.  The Court will discuss each of Defendant's challenges in turn.

A.      PLAINTIFF'S FEE ARRANGEMENT

Defendant argues that Plaintiff failed to provide her fee arrangements, thereby preventing Defendant from verifying that Ms. Alberhasky's travel time would have been billed to Plaintiff, or that Mr. Gardner would have been paid at the rate used to calculate Plaintiff's desired award. Plaintiff contends that her fee arrangements are irrelevant because fee-shifting statutes, such as the one contained in the IDEA, permit fee awards for amounts other than those billed, such as awarding fees to pro bono counsel.

The Court agrees that Plaintiff is not required to produce her fee arrangements to obtain an award of fees for Ms. Alberhasky's travel time or Mr. Gardner's services.  As discussed below, attorneys' fee requests under IDEA are determined using the lodestar method.  While the amount actually billed to a client might be a useful factor in some cases relying on the lodestar method, an award is not limited by the actual amount billed to the client.[3]  Rather, "the fee

---

[3] *See, e.g.*, *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 550 (2010) ("[T]he lodestar method produces an award that *roughly* approximates the fee that the prevailing attorney would

applicant [simply] bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates."[4]  Plaintiff is not required to produce her fee arrangement to satisfy this burden.  Based on the foregoing, the Court will not exclude any time based on Plaintiff's failure to present her fee arrangements.

B.      TRAVEL EXPENSES

Plaintiff seeks fees incurred by Ms. Alberhasky for travel to and from the February 2013 IEP meeting (15.9 hours), the due process hearing in April 2013 (14.3), the district court hearing initially scheduled for June 2014 (14 hours), and the district court hearing held in August 2014 (14 hours).  Defendant objects to these hours and argues that attorneys in the local market typically discount or write off travel time.

To award travel expenses, the Court must first decide "whether such expenses are expenses normally billed to a private client in the local area and, if so, evaluate the reasonableness of the amount."[5]

In the Court's experience, it is common for attorneys in the local market to bill travel time.  Plaintiff argues, and the Court agrees, that Ms. Alberhasky suffered opportunity costs during the time she was traveling on Plaintiff's behalf.  Ms. Alberhasky traveled to and from Utah four times in connection with this dispute, for four separate hearings.  Based on the

---

have received if he or she had been representing a paying client who was billed by the hour in a comparable case.").

[4] *Hensley v. Eckerhart*, 461 U.S. 424, 437 (10th Cir. 1983).

[5] *Bee v. Greaves*, 910 F.2d 686, 690 (10th Cir. 1990).

foregoing, the Court finds that Plaintiff is entitled to a full award of Ms. Alberhasky's travel time, except where reduced on other grounds, as discussed below.

C.    IEP MEETINGS

Plaintiff seeks attorneys' fees incurred in connection with IEP meetings held in February 2013, February 2014, and April 2014.  Defendant argues that the IDEA prohibits awarding attorneys' fees relating to IEP meetings.  Defendant objects to 103.1 hours of time billed in connection with IEP meetings: 2.3 hours billed by Mr. Gardner, 89.4 hours—including 15.9 hours of travel time—billed by Ms. Alberhasky, and 11.4 hours billed by Mr. Strindberg.  These hours account for $30,930 of Plaintiff's attorneys' fee request.

The Act provides, "Attorneys' fees may not be awarded relating to any meeting of the IEP Team unless such meeting is convened as a result of an administrative proceeding or judicial action . . . ."[6]  The Tenth Circuit has not addressed this provision, but the Third Circuit has interpreted the clause and concluded that "whether a particular IEP Team meeting results from an administrative proceeding is first a factual question of causation."[7]

> [A]n administrative proceeding can be causally connected to the prevailing party's relief if the pressure of the proceeding was a material contributing factor in bringing about the relief sought and ultimately obtained by the child's parents. Thus, the real question . . . is one of fact: was the scheduled due process hearing the catalyst for the [IEP meeting]?[8]

Defendant argues that the IEP meetings did not result from the administrative or judicial proceedings because the meetings were "held in [their] due course, with the goal of finalizing the

---

[6] 20 U.S.C. § 1415(i)(3)(D)(ii).

[7] *Daniel S. v. Scranton Sch. Dist.*, 230 F.3d 90, 95 (3d Cir. 2000).

[8] *Id.* at 94 (citation omitted).

IEP for the year"[9] and were held because the State believed the meetings to be mandated by law.[10]

Plaintiff directs the Court's attention to the IDEA's stay-put provision at 20 U.S.C. 1415(j), which states, "[D]uring the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current placement." Plaintiff contends that, because the February 2013, February 2014, and April 2014 IEP meetings were conducted during the pendency of administrative or judicial proceedings, they were held contrary to the stay-put provision. As such, Plaintiff argues, the meetings were the result of the administrative or judicial proceedings.

The Court finds that the stay-put provision does not provide conclusive indications about whether the IEP meetings were the result of the administrative or judicial proceedings. Plaintiff appears to argue that any IEP meetings held while a stay-put provision is in effect would be the result of the administrative or judicial proceedings. The Third Circuit has specifically rejected this formulation.[11] Moreover, the stay-put provision permits changes to the child's then-current placement so long as the parents and State or local educational agency agree to the change. Although the Court is convinced that the administrative and judicial proceedings likely affected

---

[9] Docket No. 47, at 13–14.

[10] *See* Docket No. 53, at 3.

[11] *See Daniel S.*, 230 F.3d at 95 (rejecting argument that "an IEP Team meeting results from an administrative proceeding any time it occurs *after* the administrative proceeding has been *requested*, whether or not the requested proceeding was the catalyst for the meeting in question")

the discussions in the IEP meetings, the fact that they occurred during the stay-put period does not demonstrate that the proceedings were the catalyst for the IEP meetings.

As for the February 2013 IEP meeting specifically, the hearing officer and this Court found that, at the end of the December 2012 IEP meeting, the IEP Team determined that a follow-up meeting would be necessary to complete the IEP. Plaintiff argues that she requested a due process hearing shortly thereafter because she believed the IEP Team process had broken down. Again, the Court is convinced that the initiation of an administrative proceeding likely influenced the discussion at the February 2013 IEP meeting. But the Court finds that the meeting did not result from the administrative proceeding. The meeting was first proposed before the administrative proceeding had been initiated, and Plaintiff has not demonstrated that a causal connection otherwise exists between the decision to convene the meeting and the administrative proceeding.

Similarly, Plaintiff has not demonstrated that the pressure of the judicial action was a material contributing factor in bringing about the relief sought and ultimately obtained in the February 2014 and April 2014 IEP meetings, or that the judicial action was a catalyst for the meetings. Plaintiff asserts that counsel for both parties discussed amendments to M.S.'s 2012–2013 IEP beginning at the February 2014 IEP meeting and continuing for the following two months until ultimately agreeing to an updated 2012–2013 IEP at the April 2014 IEP meeting. Although the approved amendments to the IEP reflect those sought in the instant suit, correlation is not causation. Plaintiff has not provided any evidence demonstrating that the pressure of the judicial action was a factor in the ultimate amendment to M.S.'s 2012–2013 IEP, which was achieved during the February 2014 and April 2014 IEP meetings.

7

Based on the foregoing, the Court finds that Plaintiff is not entitled to attorneys' fees relating to the February 2013, February 2014, or April 2014 IEP meetings.

### D.    ADMINISTRATIVE AND JUDICIAL PROCEEDINGS

Plaintiff also seeks attorneys' fees arising from the due process hearing, and litigation before this Court.

The IDEA grants discretion to courts to award reasonable attorneys' fees to, among others, "a prevailing party who is the parent of a child with a disability."[12] "For this purpose, the parents prevail 'when actual relief on the merits of [the child's] claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff.'"[13] Defendant concedes that Plaintiff prevailed in part and agrees that Plaintiff is entitled to a reduced award of attorneys' fees.[14]

The determination of whether a party is a prevailing party does not end the inquiry, however, because "[a]n award of attorney's fees must also be reasonable."[15] "To determine the reasonableness of a fee request, a court must begin by calculating the so-called 'lodestar amount' of a fee, and a claimant is entitled to the presumption that this lodestar amount reflects a 'reasonable' fee."[16] The lodestar amount is "[t]he product of reasonable hours times a

---

[12] 20 U.S.C. § 1415(i)(3)(B)(i).

[13] *Miller ex rel. S.M. v. Bd. of Educ. of Albuquerque Pub. Schs.*, 565 F.3d 1232, 1246–47 (10th Cir. 2009) (quoting *Urban ex rel. Urban v. Jefferson Cnty Sch. Dist. R-1*, 89 F.3d 720, 729 (10th Cir. 1996)) (alteration in original).

[14] Docket No. 47, at 13.

[15] *Urban*, 89 F.3d at 729.

[16] *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998).

reasonable rate."[17]  In calculating this amount, the IDEA explains that "[f]ees awarded . . . shall be based on rates prevailing in the community in which the action or proceedings arose for the kind and quality of services furnished."[18]  Although "'the lodestar figure includes most, if not all, of the relevant factors constituting a reasonable attorney's fee,'"[19] "[t]here remain other considerations that may lead the district court to adjust the fee upward or downward."[20] "[W]here the plaintiff's claims arise out of a common core of facts, and involve related legal theories, the inquiry is more complex.  In such a case, . . . 'the most critical factor is the degree of success obtained.'"[21]

     *1.     Due Process Hearing*

     The Court begins by calculating the lodestar amount for fees associated with the due process hearing.  Ms. Alberhasky billed 370.3 hours at $300 per hour, one of Ms. Alberhasky's paralegals billed 14 hours at $100 per hour, and Mr. Gardner billed 128.6 hours at $300 per hour. The lodestar amount is therefore $151,070.  Next, the Court will adjust this amount upward or downward depending upon the degree of success obtained.

     At the administrative level, Plaintiff asserted that M.S. was denied a free appropriate public education ("FAPE") based on the following five alleged procedural violations:

---

[17] *See Hensley*, 461 U.S. at 434.

[18] 20 U.S.C. § 1415(i)(3)(C).

[19] *Perdue*, 559 U.S. at 553 (quoting *Pennsylvania v. Del. Valley Citizens Council for Clean Air*, 483 U.S. 711 (1987)).

[20] *Hensley*, 461 U.S. at 434.

[21] *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 789 (1989) (quoting *Hensley*, 461 U.S. at 436).

predetermination of extended school year services, denial of Plaintiff's meaningful participation during certain IEP meetings, revision of M.S.'s 2010–2011 IEP outside the IEP Team process, discontinuation of an accommodation (the FM system) without the IEP Team's approval, and failure to provide written notice concerning changes to M.S.'s 2011–2012 IEP. Plaintiff also asserted seven substantive issues: reimbursement of travel expenses incurred in connection with M.S.'s independent educational evaluation, whether M.S.'s 2010–2011 and 2011–2012 IEPs were appropriate, failure to implement IEPs for two years, failure to identify M.S. as deafblind, failure to propose a 2012–2013 IEP reasonably calculated to enable M.S. to receive an educational benefit, and whether Provo School District would be an appropriate placement for M.S., and if not, whether Perkins would be an appropriate placement.

The hearing officer ultimately concluded that USDB effectively denied M.S. FAPE by determining that she was not eligible for extended school year services for 2011 and 2012, outside of the IEP Team meeting. Although the hearing officer also concluded that amending M.S.'s 2010–2011 IEP outside of an IEP meeting constituted a procedural violation, the hearing officer nonetheless found that this violation did not amount to a denial of FAPE. As for Plaintiff's substantive issues, the hearing officer found that placement at Provo School District was not appropriate. The hearing officer ordered USDB to provide M.S. with compensatory educational services in the form of speech language pathology sessions, and ordered M.S.'s 2012–2013 IEP to be amended to reflect her placement at USDB, instead of Provo School District.

Having reviewed the administrative record, the Court finds that although Plaintiff was a prevailing party to some extent, the degree of her success was minor. Plaintiff successfully

10

obtained educational services to compensate for USDB's predetermination that M.S. was not

eligible for extended services in 2011 and 2012.  She also succeeded in preventing M.S.'s

placement in Provo School District.  The Court notes that while these were relatively minor

successes given the range of issues and time periods involved, the successes were not

unimportant.  Moreover, as discussed below, Plaintiff later prevailed on three noteworthy issues

when this Court reviewed the hearing officer's conclusions.

Based on the foregoing, the Court finds that a reasonable fee, based in part on the degree

of success, is 30% of the lodestar figure.  The Court therefore reduces the lodestar figure for fees

associated with the due process hearing by 70%, to $45,321.

       2.     *Federal Court Litigation*

The Court next calculates the lodestar amount for fees generated while litigating the

instant suit.  Ms. Alberhasky billed 179.3 hours and Mr. Strindberg billed 84.1 hours, with both

billing at $300 per hour, and Mr. Strindberg's paralegal billed 11.35 hours at $115 per hour, and

an administrative assistant in his office billed 1 hour at $95 per hour.  In total, the lodestar

amount for the suit filed before this Court is $80,420.25.

Neither party sought review of the hearing officer's finding that USDB denied M.S.

FAPE by predetermining her ineligibility for extended school year services, or the hearing

officer's award of compensatory education services.  However, the parties sought this Court's

review of every other issue raised at the administrative level.  The Court reversed the hearing

officer on three of those issues.  First, the Court found that USDB denied M.S. FAPE by

discontinuing use of the FM system without the IEP Team's approval.  Second, the Court

ordered that Plaintiff was entitled to reimbursement for travel expenses relating to M.S.'s

independent educational evaluation, which was performed in Massachusetts. Third, the Court found that USDB denied M.S. FAPE by failing to implement her 2011–2012 IEP. The Court affirmed the hearing officer on all remaining issues, including the issue concerning M.S.'s placement at Provo School District, upon which Plaintiff had prevailed at the administrative level. Consequently, the Court ordered compensatory educational services consistent with the Court's findings and directed the IEP Team to meet to establish an updated IEP.

Plaintiff obtained a greater degree of success before this Court than she had obtained at the due process hearing. But, as explained above, the Court accounted for this success to some extent when calculating a reasonable award for fees at the administrative level. Additionally, as Defendant argues, it is worth noting that Plaintiff's preferred outcome in this matter was to obtain a placement for M.S. at Perkins. Although the Court's Order did not foreclose this possibility, the Court sought the IEP Team's expertise in fashioning an updated IEP, including determination of the appropriate placement for M.S.

Based on the foregoing, the Court finds that a reasonable fee, based in part on the degree of success, is 40% of the lodestar figure. The Court therefore reduces the lodestar figure for fees associated with the litigation before this Court by 60%, to $32,168.10.

In conclusion, the Court finds that Plaintiff is entitled to attorneys' fees incurred in connection with the due process hearing and the proceedings before this Court. The Court finds that a total reasonable fee for these services is $77,489.10.

C.      NON-ITEMIZED & IEP-MEETING COSTS

Defendant contends, "Plaintiff has submitted costs of $5,427.35 that are not itemized" and objects to an award of those costs "based on the right Defendant has to know what costs are

being taxed against him."[22]  Defendant also objects to Plaintiff's Bill of Costs to the extent

Plaintiff seeks costs associated with IEP Team meetings that were not the result of an

administrative or judicial proceeding.  These issues are better left to the Clerk of Court in the

first instance.  Plaintiff is directed to file a properly supported Bill of Costs in compliance with

Federal Rule of Civil Procedure 54(d) and DUCivR 54-2.  The Court can then review the action

taken by the Clerk of Court pursuant to DUCivR 54-2(d).

III.  CONCLUSION

It is therefore

ORDERED that Plaintiff's Amended Motion for Attorneys' Fees (Docket No. 49) is

GRANTED IN PART AND DENIED IN PART.  It is further

ORDERED that Plaintiff's Motion for Attorneys' Fees (Docket No. 46) is DENIED AS

MOOT.

DATED this 18th day of December, 2014

BY THE COURT:

TED STEWART
United States District Judge

---

[22] Docket No. 48, at 2.