IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| M.S., a minor, by and through her parent, J.S., <br><br> Plaintiff, <br><br> v. <br><br> UTAH SCHOOL FOR THE DEAF AND THE BLIND, <br><br> Defendant. | MEMORANDUM DECISION AND ORDER AWARDING ATTORNEYS' FEES TO PLAINTIFF <br><br><br> Case No. 2:13-CV-420-TS <br><br> District Judge Ted Stewart |

This matter is before the Court on the parties' motions regarding the proper award of attorneys' fees to Plaintiff following remand from the Tenth Circuit. For the reasons discussed below, the Court will award Plaintiff attorneys' fees in the amount of $162,043.18.

## I. BACKGROUND

Plaintiff, M.S., by and through her mother, J.S., originally filed this suit on June 7, 2013, based on alleged violations of the Individuals with Disabilities Education Act ("IDEA") by Defendant Utah School for the Deaf and Blind ("USDB"). On January 8, 2013, J.S. filed for a due process hearing to resolve a number of concerns primarily regarding M.S.'s Individual Education Programs ("IEP") for the 2010-2011, 2011-2012, and 2012-2013 school years. Plaintiff presented five procedural issues and seven substantive issues to the hearing officer for decision. The procedural issues presented were as follows: (1) Did USDB pre-determine extended school year services for the student for 2011 and 2012? (2) Was J.S. denied meaningful participation in three of the IEP team meetings? (3) Did USDB revise the 2010-2011 IEP outside of an IEP team meeting? (4) Did USDB discontinue using the FM system without the approval

1

of the IEP team and without noticing J.S.? (5) Did USDB fail to give J.S. written notice of the changes made to M.S.'s 2011-2012 IEP?

The seven substantive issues presented were as follows: (1) Is USDB obligated to reimburse J.S. for the travel expenses incurred in obtaining M.S.'s IEE conducted by Perkins? (2) Were the IEPs for the 2010-2011 and 2011-2012 school years appropriate? (3) Did USDB fail to properly implement M.S.'s IEP for the two years preceding the Complaint? (4) Should USDB have identified M.S. as both deaf and blind in the IEP and provided services accordingly? (5) Was Provo School District an appropriate placement for M.S.? (6) Did USDB propose an IEP for the 2012-2013 school year that was reasonably calculated to provide M.S. with an education benefit? (7) Should M.S. be placed at Perkins at USDB's expense?

The hearing officer issued a decision on May 20, 2013, finding that USDB violated the IDEA and denied M.S. a free and appropriate public education ("FAPE") for the summers of 2011 and 2012 and ordered compensatory services accordingly. The hearing officer further found that USDB's proposed placement to Provo School District was not appropriate. On all other matters, the hearing officer found in favor of USDB.

Plaintiff sought review of the hearing officer's decision in this Court. Both M.S. and USDB filed motions for judgment on the administrative record. The Court issued its Order on August 25, 2014, which affirmed in part and reversed in part the hearing officer's May 10, 2013 Order. Regarding the procedural issues, the Court reversed the hearing officer's decision that USDB's discontinued use of the FM system during the 2011-2012 school year without approval of the IEP team and without written notice to J.S. did not deny M.S. a FAPE. The Court upheld the hearing officer's decision on all other procedural issues.

Regarding the substantive issues, the Court reversed the hearing officer's decision and held in favor of M.S. on several issues. First, the Court held that USDB was obligated to reimburse J.S. for travel-related expenses incurred in connection with the Perkins IEE. Second, though the Court agreed with the hearing officer that the IEPs for the 2010-2011, 2011-2012, and 2012-2013 school years were adequate, the Court found that the 2011-2012 IEP was not adequately implemented.

Third, the Court found that USDB failed to properly take into account M.S.'s dual sensory loss and that USDB must consider M.S.'s hearing loss when strategizing M.S.'s IEPs. Further, the Court agreed with the hearing officer that placement at Provo School District would be inappropriate because of the reduction of available services. The Court directed M.S.'s IEP team to determine if Perkins was a necessary placement for M.S. Finally, in light of its finding that M.S. was denied a FAPE for the 2010-2011 academic year, the Court ordered an academic year and a half of compensatory education.

As the undisputed prevailing party, Plaintiff moved for an order awarding attorneys' fees. The Court awarded Plaintiff a fraction of the requested fees on account of Plaintiff's limited success. More specifically, the Court awarded Plaintiff 30 percent of the requested fees for work associated with the administrative hearing and 40 percent of the requested fees for work associated with the proceedings in this Court, for a total of $77,489.10.

M.S. appealed the Court's ruling to leave the decision of M.S.'s placement at Perkins to her IEP team. Plaintiff also appealed the Court's decision regarding attorneys' fees.

The Tenth Circuit vacated the Court's orders and remanded two issues for the Court to resolve: (1) whether M.S. should be placed at Perkins and (2) the proper award of attorneys' fees.

Following remand from the Tenth Circuit, USDB filed a motion for summary judgment on the placement issue. In response, Plaintiff filed a Rule 56(d) motion, which the Court granted. Later, Defendant filed a motion to end Plaintiff's Rule 56(d) discovery and provide a deadline for Plaintiff to respond to its summary judgement motion. Plaintiff did not oppose this motion.

Plaintiff then filed a notice withdrawing her claim that M.S. should be placed at Perkins. Plaintiff alleged that, on consulting with her expert witness, the expert explained that she could no longer opine that M.S., now 20 years old, would benefit from placement at Perkins, given her advanced age.

Upon Plaintiff's withdrawal of the Perkins claim, USDB withdrew its pending motion for summary judgment, leaving only the issue of attorneys' fees for the Court to resolve. The parties submitted briefing on their respective arguments for the proper amount of attorneys' fees to be awarded to Plaintiff in light of the Tenth Circuit's decision.

## II. DISCUSSION

The IDEA provides that a court may award reasonable attorneys' fees "to a prevailing party who is the parent of a child with a disability."[1] "[T]he level of a plaintiff's success is relevant to the amount of fees to be awarded."[2] "Where the plaintiff has failed to prevail on a claim that is distinct in all respect from his successful claims, the hours spent on the unsuccessful

---

[1] 20 U.S.C. § 1415(i)(3)(B)(i)(I).

[2] *Hensley v. Eckerhart*, 461 U.S. 424, 430 (1983).

claim should be excluded in considering the amount of a reasonable fee."[3] "There is no precise rule or formula for making these determinations. The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success. The court necessarily has discretion in making this equitable judgment."[4] However, the Supreme Court has warned that courts must take certain considerations into account.[5]

The Court originally awarded 30 percent of the fees associated with the due process hearing and 40 percent of the fees incurred in association with the federal court proceedings. These percentages roughly correlated to the fraction of claims on which Plaintiff was successful. On appeal, the Tenth Circuit vacated the fee order and remanded for further consideration holding, "[w]hether J.S. ultimately prevails on her claim that M.S. should be placed at Perkins is highly relevant to the question of the level of success she obtained."[6] However, in remanding the fee award determination, the Tenth Circuit noted that the "purely mechanical analysis of an appropriate fee award, which appears to allow fees in proportion to the number of claims upon which J.S. prevailed is at odds with governing precedent."[7] Quoting *Hensley v. Eckerhardt*, the Tenth Circuit explained:

> In cases where a plaintiff's claims for relief involve a common core of facts or are based on related legal theories[,] "much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series

---

[3] *Id.* at 440.

[4] *Id.* at 436–37.

[5] *Id.* at 437.

[6] *M.S. ex rel. J.S. v. Utah Sch. for Deaf & Blind*, 822 F.3d 1128, 1137 (10th Cir. 2016).

[7] *Id.*

5

of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation."[8]

Though the Circuit Court left the ultimate determination to this Court, it advised that "the IDEA claims at issue in this case do not appear to be 'unrelated' as that term is defined in *Hensley*."[9] And further instructed,

> On remand the district court must first resolve whether some of the claims raised in J.S.'s federal-court complaint were unrelated. If J.S. lost on claims that were unrelated to the claims on which she succeeded, then no fee may be awarded for counsel's services on the unsuccessful claims. If, on the other hand, the district court concludes all claims raised in J.S.'s suit are related, it must consider the significance of the overall relief obtained by J.S. in relation to the hours reasonably expended on the litigation.[10]

Plaintiff argues she should be awarded all fees associated with the administrative, district, and appellate proceedings because each of Plaintiff's claims are related and she achieved significant success. Plaintiff further argues she should be awarded fees for the time her attorney spent in IEP meetings.

USDB argues Plaintiff should be awarded minimal attorneys' fees because Plaintiff's unsuccessful claims are wholly unrelated to Plaintiff's successful claims and Plaintiff was not successful on her claim that M.S. should be placed at Perkins. Defendant further requests that, to the extent Plaintiff is awarded attorneys' fees, those fees should be reduced in accordance with the time expended by Defendant in unnecessary proceedings.

---

[8] *Id.* at 1137–38 (quoting *Hensley*, 461 U.S. at 435).

[9] *Id.* at 1138.

[10] *Id.* (internal citations and quotation marks omitted).

*a. Plaintiff is the prevailing party*

Under the IDEA, "the parents prevail 'when actual relief on the merits of [the child's] claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff.'"[11] That Plaintiff was the prevailing party at both the administrative and district levels does not appear to be in dispute. M.S. may not have achieved every desired result, but both the administrative hearing officer and this Court issued orders that materially altered M.S.'s placement at USDB. M.S. therefore is the prevailing party and is entitled to an award of attorneys' fees.

*b. Plaintiff's successful claims are related to her unsuccessful claims*

The Court must next determine if the claims on which M.S. prevailed are "unrelated" to the claims on which Plaintiff was not successful. If the unsuccessful claims are unrelated to the successful claims, "the hours spent on the unsuccessful claim[s] should be excluded in considering the amount of a reasonable fee."[12] Claims are unrelated if they are "distinctly different claims for relief that are based on different facts and legal theories."[13] The Court in *Hensley* noted that "[i]t may well be that cases involving such unrelated claims are unlikely to arise with great frequency"[14]

Regarding M.S.'s five procedural claims, each claim makes the same general allegation: that USDB denied M.S. a FAPE by failing to notify and/or consult with either J.S. or the IEP

---

[11] *Miller ex rel. S.M. v. Bd. Of Educ. of the Albuquerque Pub. Sch.*, 565 F.3d 1232, 1247 (10th Cir. 2009) (quoting *Urban by Urban v. Jefferson Cty. Sch. Dist. R-1*, 89 F.3d 720, 729 (10th Cir. 1996)).

[12] *Hensley*, 461 U.S. at 440.

[13] *Id.* at 434.

[14] *Id.* at 435.

team before making a change to the IEP or the implementation of the IEP. The overlap in fact and law between the successful claim and the unsuccessful claims is, therefore, significant. The IDEA grants parents the rights to,

> (1) examine all records relating to their child; (2) participate in the IEP preparation process; (3) obtain an independent evaluation of their child; (4) receive notice before an amendment to an IEP is either proposed or refused; (5) take membership in any group that makes decisions about the educational placement of their child; and (6) receive formal notice of their rights under the IDEA.[15]

To recover for a procedural violation, a plaintiff must first show that one of the above-listed violations occurred. If the plaintiff is able to prove the violation occurred, it must additionally show that the violation (1) impeded the student's right to a FAPE; (2) significantly impeded the parent's opportunity to participate in the decision-making process regarding the provision of a FAPE to the student; or (3) caused a deprivation of educational benefit.[16]

Each of Plaintiff's procedural claims would involve an analysis under the above-stated law. Further, each procedural claim would involve facts and arguments regarding M.S.'s educational needs and the significance of USDB's alleged failure to meet those needs. Therefore, though Plaintiff was successful on only one of these claims—that USDB's discontinuance of the FM system without the approval of the IEP and without noticing J.S. denied M.S. a FAPE—this one successful claim involves the same general facts and legal issues as each of the unsuccessful claims.

---

[15] *Ellenberg ex rel. S.E. v. N.M. Military Inst.*, 478 F.3d 1262, 1269 (10th Cir. 2007) (internal citations omitted).

[16] 20 U.S.C. § 1415(f)(3)(E)(ii); 34 C.F.R. § 300.513(a)(2).

Plaintiff's unsuccessful substantive claims also share a common core of facts and/or related legal theories with her successful claims. Plaintiff was unsuccessful in her claims that M.S.'s IEPs for the 2010-2011, 2011-2012, and 2012-2013 school years were inappropriate or not reasonably calculated to provide M.S. with a FAPE. Plaintiff was also unsuccessful in proving that USDB failed to properly implement M.S.'s IEP for the 2010-2011 school year. Finally, although M.S. was successful at the appellate level in remanding the issue of placement at Perkins, Plaintiff ultimately withdrew this claim and was, therefore, unsuccessful. The analyses of each of these unsuccessful claims generally involves facts related to M.S.'s educational needs, which were largely unchanged throughout the three school years at issue, and USDB's alleged failure to meet those needs, via either the construction of the IEP or the implementation of the IEP. An analysis of the majority of Plaintiff's successful claims involves those same general facts. Thus, the Court finds that each of Plaintiff's unsuccessful claims are related to Plaintiff's successful claims.

USDB disagrees. In support of its argument, USDB cites to a number of IDEA cases in which a district court reduced an attorneys' fees award.[17] In *Platt v. District of Columbia*[18] the District Court for the District of Columbia found the plaintiff's unsuccessful claim regarding an IEP purportedly issued in 2009 was unrelated to the plaintiff's successful claims relating to the student's IEPs for the school years between 2011 and 2013. However, the facts in *Platt* are easily distinguishable from those in the case at hand. The hearing officer's analysis regarding the

---

[17] USDB cited to *Dicks v. D.C.*, 109 F. Supp. 3d 126, 133 (D.D.C. 2015) and *Joaquin v. Friendship Public Charter Sch.*, 188 F. Supp. 3d 1, 11 (D.D.C. 2016), in addition to the two cases discussed. However, these cases do not include a finding that the unsuccessful and successful claims were unrelated and are, therefore, irrelevant to this discussion.

[18] 168 F. Supp. 3d 253 (D.D.C. 2016).

9

unsuccessful claim in *Platt* involved determining whether the 2009 IEP ever took place and whether the student was receiving any special education services at the time in question. There was also of question of timeliness. The hearing officer found that the record did not support that the student was receiving special education services under the IDEA in 2009 and that no IEP was in place. The hearing officer further found the claim to be untimely. Therefore, a substantive analysis of the purported IEP never took place. The district court ultimately found that the 2009 IEP claim "concerned a different time period and implicated different legal questions, such as whether Plaintiff's claim was barred by the applicable statute of limitations."[19] Such is not true here. There are no unsuccessful claims that involve legal analyses or facts completely unrelated to a successful claim. Each unsuccessful claim involved a substantive analysis of one of three IEPs, which, as discussed, relied on a common core of facts with Plaintiff's successful claims.

Defendant also cites to *L.P. v Longmeadow Public Schools*.[20] In *L.P.*, the District Court for the District of Massachusetts parsed attorneys' fees upon finding that the FAPE claims and IEP implementation claims were unrelated.

> FAPE issues focus on whether the services, goals, and other specifications set forth in an IEP were appropriate, given the student's needs. In contrast, implementation focuses simply on whether the services proposed in an IEP have actually been provided. In other words, FAPE issues involve what should have been done, implementation issues involve what actually was done.[21]

The court ultimately held that it was "hard-pressed to imagine the facts and circumstances that render the legal tasks associated with these very different analyses completely indistinguishable." The *L.P.* court also found that the plaintiff made no "attempt to specify the

---

[19] *Id.* at 263.

[20] CIV.A. 10-40190-FDS, 2012 WL 5200078 (D. Mass. Oct. 18, 2012).

[21] *Id*. at *5.

10

core facts involved in the case," nor did the plaintiff specify which issues they claimed were "so intertwined with the issue of implementation as to be inextricable."[22]

Here, it would not be practical for Plaintiff to bring separate suits against USDB for its alleged failures in design and implementation. To properly analyze the implementation of the IEP, it is necessary to understand the facts about the underlying IEP and the student's particular educational needs. Therefore, the Court does not agree that the facts and arguments relating to the design of the IEP are wholly distinguishable from those relating to the implementation of an IEP. Though there may be circumstances where the two analyses are not interrelated, such is not the case here.

In light of the Court's finding that Plaintiff's successful and unsuccessful claims are related, the Court will include the time spent on all claims in calculating the lodestar amount.

*c. The lodestar amount*

The Court must next determine the lodestar amount of Plaintiff's attorneys' fees.[23] Plaintiff requests $280,766.70 in attorneys' fees. This amount appears to be a combination of the full amount of fees originally requested for the administrative and district proceedings, including fees for attendance of several IEP meetings, and the fees incurred in the appellate proceedings.

Plaintiff requests attorneys' fees associated with the February 2013, February 2014, and April 2014 IEP meetings. In its prior Order, the Court held that Plaintiff was not entitled to attorneys' fees relating to these meetings. This decision was a not appealed to the Tenth Circuit,

---

[22] *Id.* at *4.

[23] Attorneys' fees requests under the IDEA are determined using the lodestar method. Relying on the lodestar method, "the fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley*, 461 U.S. at 437.

nor was it remanded and will therefore not be reconsidered. Further, Plaintiff has failed to convince the Court that its earlier decision was incorrect.

Plaintiff requests $20,627.50 in fees associated with the appellate proceedings. "[A] 'prevailing party' is not automatically entitled to an award of appeal-related attorneys' fees."[24] "Absent an explicit provision, in order for [the Tenth Circuit] to properly exercise [their] discretion, an application for appeal-related attorneys' fees must first be made to [the Tenth Circuit]."[25] Upon request, the Tenth Circuit may determine an award of appellate-related fees is appropriate and "may then remand to the district court to determine an award of reasonable fees."[26] Plaintiff did not first request an award of attorneys' fees for the appellate proceedings from the Tenth Circuit. Thus, the Court does not have jurisdiction to award attorneys' fees associated with the appeal.

In light of the above, the maximum amount M.S. would otherwise be entitled to as the prevailing party is $231,490.25. Because M.S. only prevailed on a limited number of her claims, the Court must now consider the reasonableness of the requested fee.

*d. Plaintiff achieved limited success*

> If . . . a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith. Congress has not authorized an award of fees whenever it was reasonable for a plaintiff to bring a

---

[24] *Hoyt v. Robson Cos., Inc.*, 11 F.3d 983, 985 (10th Cir. 1993).

[25] *Id.*

[26] *Id.*; *see also R. M-G. v. Bd. of Educ. for the Las Vegas City Sch.*, 645 F. App'x 672, 678 (10th Cir. 2016) ("Finally, because Parent may be entitled to recover attorney fees for prevailing on appeal, we remand for the district court to determine whether such fees are warranted, and if so, the amount of those fees.").

lawsuit or whenever conscientious counsel tried the case with devotion and skill. Again, the most critical factor is the degree of success obtained. [27]

"[T]he district court must make a qualitative assessment to determine what less-than-perfect results are 'excellent,' justifying full recovery, or to what extent plaintiffs' 'limited success' should effect a reduction in the lodestar. 'There is no precise rule or formula' for making such determinations."[28]

Plaintiff argues she received substantial and significant relief on all her claims because "[t]he central contention of Plaintiff's claims was Defendant's failure to properly identify M.S. as dual sensory impaired (deafblind), Defendant failing to utilize dual sensory loss strategies, and that Defendant denied M.S. FAPE."[29] Conversely, Defendant argues Plaintiff's relief was minimal because her main goal with bringing the litigation was to be placed at Perkins.

Defendant cites to the Tenth Circuit's decision stating,

> Whether J.S. ultimately prevails on her claim that M.S. should be placed at Perkins is highly relevant to the question of the level of success she obtained. For instance, in urging this court to affirm the district court's limited award of fees, USDB argues J.S.'s real purpose in bringing this suit was to have M.S. placed at Perkins and that her failure to obtain that relief demonstrates the limited success she achieved.[30]

M.S.'s placement at Perkins has undoubtedly been a central issue in this case. At the administrative, district, and appellate courts, Plaintiff argued that USDB lacks the ability to provide M.S. with a FAPE and, accordingly, USDB must bear the cost of placing M.S. at

---

[27] *Hensley*, 461 U.S. at 436.

[28] *Jane L. v. Bangerter*, 61 F.3d 1505, 1511 (10th Cir. 1995) (quoting *Hensley*, 461 U.S. at 436).

[29] Docket No. 137, at 7.

[30] *M.S. ex rel. J.S.*, 822 F.3d at 1137.

Perkins.[31] Therefore, that M.S. was not ultimately placed at Perkins justifies a significant reduction of the lodestar amount. However, as stated by the Tenth Circuit, "even apart from the issue of M.S.'s potential placement at Perkins, J.S. obtained substantial and significant relief."[32]

The Court found that M.S.'s dual sensory impairment must be considered in all future IEPs, that M.S. need be "enrolled in a classroom at a residential program with a teacher and staff who specialize in teaching dual sensory-impaired children," that M.S. be provided with "a total communication approach that requires instructors to simultaneously voice, use tactile signs, and use gestures as well as a voice output device and object choice board."[33] The Court further ordered that M.S. receive one and a half years of compensatory education at USDB's expense. Plaintiff also succeeded in her claim regarding M.S.'s placement at Provo School District and received reimbursement for the expenses incurred from the Perkins IEE.

Despite not succeeding on the Perkins claim, Plaintiff received much of the relief she sought in regards to USDB's treatment of M.S. Accordingly, the Court will award Plaintiff 70 percent of the lodestar amount.

  *e. Plaintiff's withdrawal of the Perkins claim does not merit a reduction in fees*

The IDEA provides that the Court shall reduce the amount of attorneys' fees awarded to a prevailing plaintiff where "the parent, or the parent's attorney, during the course of the action or proceeding, unreasonably protracted the final resolution of the controversy."[34] USDB argues the

---

[31] *See* Docket No. 136, at 8–10 (collecting statements).
[32] *M.S. ex. rel. J.S.*, 822 F.3d at 1138.
[33] Docket No. 44, at 51.
[34] 20 U.S.C.A. § 1415(i)(3)(F)(i).

14

Court should reduce Plaintiff's fees because "Plaintiff and her counsel waited to the very end (after Rule 56(d) discovery expired) to capitulate on her Perkins placement demand."[35]

The Court does not find support in the record for a reduction in fees. Plaintiff alleges that upon consult with her expert witness, she discovered that the expert could no longer opine that M.S. would benefit from placement at Perkins given M.S.'s advanced age. USDB has not argued that Plaintiff chose to withhold this information for a significant amount of time for the purpose of protracting litigation. UDSB has also not alleged what motivation Plaintiff would have in prolonging litigation. Without evidence supporting that Plaintiff unreasonably prolonged litigation, a reduction of attorneys' fees is not warranted.

### III. CONCLUSION

It is therefore

ORDERED that Plaintiff's Motion for Attorney Fees and Supporting Memorandum (Docket No. 137) is GRANTED IN PART AND DENIED IN PART. It is further ORDERED that Defendant's Motion for Attorney Fees (Docket No. 136) is DENIED. Plaintiff shall be awarded attorneys' fees in the amount of $162,043.18.

DATED this 26th day of December, 2017.

BY THE COURT:

Ted Stewart
United States District Judge

---

[35] Docket No. 136, at 14.